Mr. Justice Hagner
delivered the opinion of the Court:
These applications for writs of certiorari are made to determine the validity of certain lien certificates issued by the District authorities against lots of the petitioners, under the following circumstances:
These lots are situated facing different sides of a public square lying south of the grounds of the Smithsonian Institute, between Seventh Street on the east and Ninth Street on the west. C Street abuts upon its western and its eastern boundaries; and Eighth Street abuts upon its northern and southern boundaries. Maryland Avenue, approaching from the southwest stops at its southwest corner, and commences again at its northeast comer; and Virginia Avenue in like manner, approaching from the southwest, stops at the northwest corner and reappears at its southeast corner. No street or avenue runs through the • square; and it is unoccupied except by several railroad tracks, which enter it from the east in the lines of the two avenues, and uniting near the center, pass out down Maryland Avenue towards the Long Bridge.
The square has no designation upon the plat of the city except “ Public Square.” It measures about four hundred feet from north to south, and about 700 feet from east to west. Its position and surroundings can best be understood from an examination of the accompanying plat, which was filed with the petitions.
On July 9, 1873, the Board of Public Works entered into a contract with Albert Gleason “ to lay and put down a blue rock pavement on the carriage way of the said Maryland Avenue between the said Ninth Street S. W<, and the said Long Bridge.”
By the Act of Congress of June 20,1874, the Board of Public Works was abolished and the temporary government by *23 three Commissioners was substituted in its place. By this act it was provided that the Commissioners should “make no contract nor incur any obligation, other than such as may be necessary for the faithful administration of the valid laws' enacted for the goverment of said District, to the execution of existing legal obligations and contracts, and to the protection or preservation of improvements existing, or commenced and not completed, at the time of the passage of this act.” 18 Stat., 116.

On the 15th of April, 1875, the Commissioners modified and extended the contract with Gleason of July, 1873, by requiring the pavement to be laid with Belgian trap rock instead of blue rock, in Maryland Avenue “ between Seventh Street and Fourteenth Street S. W.” instead of between Ninth and Fourteenth. According to the terms of the original contract, all of Maryland Avenue to be paved was to the west of the Public Square; and if the work had been then completed, no portion of it would have approached nearer to the square than the west line of Ninth Street. According to the modification or extension, the distance between Seventh and Ninth Streets was added to the space to be paved.
*24 Under this modification and extension, the spaces on the north and south sides of Public Square, with portions of Eighth, Ninth and C Streets, and of Maryland Avenue, southwest of Ninth Street, as designated in the drawing we have before referred to, were paved with Belgian trap rock; but no paving whatever was ever done within the boundaries of the square.
All the work so done seems to have been finally measured in November, 1875; and in March, 1876, Congress, by statute, prohibited further work on the streets, etc. 19 U. S. Stat., 211.
In the fall of 1876 statements were made by the authorities, assessing part of the cost of the work done around Public Square upon the owners of the lots surrounding it, and among others, against the petitioners; and after certain corrections had been made in these assessments, the lien certificates of indebtedness complained of were issued in July, 1880, for the amounts of these corrected assessments with interest at 10 per cent, from November 12,1876. Each certificate recites that the Commissioners, having assessed upon the described lot the sum therein named, do issue the certificate, which with the assessment shall constitute a lien upon said property, “for its proportionate amount of the cost of improvements upon Maryland Avenue, Seventh Street to Fourteenth Street.”
The petitioners have urged a variety of objections to the validity of the certificates; but we shall content ourselves with an examination of one of the number.
Assuming for the argument, the validity of the original contract and also that the Commissioners had the power to “ modify and extend ” it, so as to include as part of Maryland Avenue to be paved under that contract the distance between Seventh and Ninth Streets, we are to examine whether the paving laid down upon the north and south sides of the Public Square can properly be regarded as part of the Maryland, Avenue improvement thereby contracted for, so that one-third *25 of its cost may be declared a lien upon the lots surrounding the Public Square, instead of being charged, like improvements in general, upon the body of the public ?
It is well settled that taxes are not a lien upon real estate unless made so by express legislative authority.
Municipal corporations, of course, have no authority to create liens by ordinance or otherwise, when none has been expressly conferred upon them; and taxes are not liens upon the property against which they are assessed, unless they are made so by charter, or unless the corporation is authorized by the legislature to declare them to be liens. Cooley, Taxation, 305, 307; 2 Dillon, Mun. Corp., sec. 659.
The authority given by Congress to the municipality to charge a portion of the cost of a street improvement upon particular lots, in excess of their general share of the cost, in common with other property holders, was conferred by the thirty-seventh section of the Act of February, 1871, which declared that the Board of Public Works should assess, “in such manner as shall be prescribed by law, upon the property adjoining and to be especially benefitted by the improvements authorized by law and made by them,” a reasonable proportion of the cost of the improvement, not exceeding one-third of such cost, which sum should be collected as all other taxes are collected.
Afterwards the Legislative Assembly of the District passed the following act, which was approved August 10, 1871.
“Be it enacted, etc., That whenever any of the improvements mentioned or referred to in section 37 of the act entitled ‘An Act to Provide a Government for the District of Columbia,’ approved the twenty-first day of February, 1871, shall be completed, a statement of the cost thereof shall be prepared by the Board of Public Works, and be filed in the office thereof; and immediately thereafter an assessment, based upon said statement, shall be made, as provided for in said section of said act, which assessment shall be collected by the said Board in the same manner as other taxes of the *26 District of Columbia are now or may hereafter be authorized to be collected.
“ Sec. 2. And be it further enacted, That withen ten days after making an assessment, the Board of Public Works shall give, or cause to be given, written or printed notice to each proprietor of property adjoining and specially benefited by any improvement of the amount assessed against the same,” etc.
In view of the indisputable principle that all statutory provisions respecting special assessments must be strictly observed, and that municipalities must keep closely to the authority conferred, it seems clear that the corporation, under an order authorizing a contract to pave a designated street, cannot pave and claim to lay a special tax on lots lying upon another street. If this were so, one such contract and order might be invoked as a sufficient authority to pave, and collect the one-third cost for paving, all the streets in a great section of the city.
In the case before us the order of the Board of Public Works, and the contract and the “extension” of the contract, could only furnish legal authority for paving Maryland Avenue. But there could be no mode of paving the thoroughfare known as Maryland Avenue, “between Seventh and Ninth Streets,” except by extending for the first time, the recognized lines of that avenue, outside the public square, diagonally through the square, from Seventh Street at its northeast comer, to Ninth Street at its southwest corner. But nothing like this was attempted, and not a particle of paving has been done within the square.
But even if the lines of Maryland Avenue had been extended through the square, in the manner described, the lots belonging to these petitioners would not be comprehended within the descriptive words of the Acts of Congress and of the Legislative Assembly authorizing the imposition of a share of the cost, upon “ the property adjoining and to *27 be especially benefited by the improvements authorized by law,” etc.
The word adjoining implies a closer relation than adjacent, which is not inconsistent with the idea of something intervening ; while adjoining necessarily implies contact. The verb is defined by Webster: “To lie or be next to, or in contact; to be contiguous, as a farm adjoining to the highway;” and Blackstone is given as the authority for this example.
In Raab vs. Maryland, 7 Md., 483, this word received a judicial construction in accordance with the foregoing definition. The Constitution of the State authorized the removal of an indictment from the Court of one county to that of an adjoining county. Raab,- being indicted in Baltimore City, claimed this right of removal, and the case was transmitted to the Court of Anne Arundel County, as an adjoining county. On his conviction there, a motion in arrest was interposed, on the ground that Anne Arundel was not adjoining Baltimore City, which is a county in law. The northern boundary of Anne Arundel County is the south bank of the middle branch of the Batapsco River; and the line of Baltimore County began at that bank and included all the river and extended many miles to the north. When Baltimore City was carved out of Baltimore County, its southern boundary stopped at the north bank of the river, thus leaving either the entire river or the southern half of it still in Baltimore County, which constituted, as the Court held, an intervening jurisdiction between the boundaries of Baltimore City and Anne Arundel County, and prevented them from being adjoining jurisdictions, within the meaning of the Constitution.
There would be no point on the line of Maryland Avenue, if it were carried diagonally through the square, where either of these lots could properly be said to be adjoining that avenue in the sense of the law; or in the manner in which city lots usually adjoin a street. These lots might equally *28 be said to be adjoining the line of Virginia Avenue, if that avenue were extended through the opposite diagonal of the square, and be held answerable for the paving of that avenue also, for they would adjoin that avenue, thus projected, quite as much as they would adjoin the line of Maryland Avenue extended.
But it is contended on the part of the District, that the paving facing the northern and southern sides of Public Square shown on the plats, should be considered as in fact the paving of Maryland Avenue. If this were so, the paving would be adjoining the lots in question. But we cannot think this position at all tenable. Those paved spaces can no more be considered as part of Maryland Avenue, than of Virginia Avenue. The relations of those avenues to the surrounding lots are identical in principle, the only difference being that where one is nearest to particular lots, the other is most remote. The Avenues are each 160 feet in width, and neither can reach the lots on the northern and southern fronts, of the public square, so as to be “ adjoining,” except by expanding, as soon as they enter the square, to a width of about 400 feet, which would practically almost obliterate the square itself.
Our decision is in accordance with the ruling of the General Term several years ago, where it was held that the Washington Market Company was not chargeable with a share of the paving of that part of Pennsylvania Avenue stretching from Ninth Street eastwardly to the eastern point of the intervening triangular reservation south of the avenue; and with a more recent decision where the lot charged, fronted on this Public Square, west of Eighth Street, Barker’s Case.

Upon this ground, waiving the consideration of all the other objections, we decide that these assessments and certificates are invalid and cannot be enforced.